IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DONALD F. CLIFFORD, JR., as Trustee | ) | |
| for the Plaintiff Class in *Tomlin, et al. v.* | ) | |
| *Dylan Mortgage Incorporated, et al.*, and | ) | |
| *Troy, et al. v. Caviness, et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV486 |
| | ) | |
| AMERICAN INTERNATIONAL SPECIALTY | ) | |
| LINES INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

BEATY, District Judge.

This matter is before the Court on Plaintiff's Motion to Remand [Document #4] and

Defendant's Motion to Dismiss [Document #35], as well as various other procedural motions. For

the reasons discussed below, Plaintiff's Motion to Remand is DENIED, and Defendant's Motion

to Dismiss is also DENIED.

I.    FACTUAL BACKGROUND

This case involves claims against Defendant American International Specialty Lines

Insurance Company ("Defendant" or "American") arising out of a liability insurance policy issued

by Defendant to HomeGold, Inc. ("HomeGold"). On or about May 5, 1998, Defendant issued its

policy of "Mortgage Bankers/Mortgage Brokers Errors and Omissions Insurance" ("the Policy")

to Emergent Group, Inc. One of the subsidiaries of Emergent Group, Inc. was Emergent Mortgage

Corporation, which subsequently changed its name to HomeGold. The Policy provided coverage

for claims made against HomeGold from May 5, 1998 through May 5, 2001 for any "Wrongful Act

of the Insured or any other person for whose action the Insured is legally responsible," and

obligated Defendant to "defend any action or suit . . . alleging a Wrongful Act, even if such action or suit is groundless, false or fraudulent. . ."

During 1999 and 2000, multiple lawsuits were brought against HomeGold by individual borrowers alleging illegal loan practices by HomeGold and/or Dylan Mortgage Incorporated ("Dylan Mortgage"), an entity with whom HomeGold contracted. These claims generally alleged that HomeGold and Dylan Mortgage had committed unfair and deceptive trade practices, had charged excessive fees and interest, and had failed to provide required disclosures in connection with home mortgage loans that were arranged by Dylan Mortgage and funded by HomeGold. The claims against HomeGold included claims against HomeGold directly as well as claims against HomeGold for derivative liability based on wrongful acts by Dylan Mortgage before the loans were transferred to HomeGold. At the time of the alleged wrongful acts, Dylan Mortgage was a North Carolina corporation engaged in the business of arranging mortgage loans in North Carolina. HomeGold was a South Carolina corporation engaged in funding and purchasing loans in multiple states, including North Carolina. These cases were referred to the North Carolina Business Courts and were handled as various class actions referred to herein as the *Tomlin* litigation. HomeGold notified Defendant of the *Tomlin* litigation, and Defendant initially agreed to reimburse HomeGold for its defense costs in those cases. However, Defendant subsequently ceased payment and refused to participate in settlement discussions in the *Tomlin* litigation.

HomeGold ultimately settled the *Tomlin* litigation on the eve of trial. However, before HomeGold completed payment of its obligations pursuant to the settlement, HomeGold filed for bankruptcy protection. The *Tomlin* plaintiffs filed a claim as creditors in the HomeGold bankruptcy. The North Carolina court handling the *Tomlin* litigation entered an Order appointing Donald F.

Clifford, Jr. "as trustee, to hold all rights, benefits, choses in action, claims or causes of action associated with Mortgage Bankers/Mortgage Brokers Errors & Omissions Insurance Policy no. 244-20-63 issued by American International Specialty Lines Insurance Company to HomeGold, Inc. (the "Insurance Policy"), and to disburse any proceeds received with respect to the Insurance Policy in accordance with such orders as this Court may enter with respect thereto."

A settlement of the *Tomlin* plaintiffs creditor claims was reached in the bankruptcy proceeding. The settlement was approved by the United States Bankruptcy Court for the District of South Carolina and provided for total cash payment by HomeGold of $2,501,000. In addition, pursuant to the settlement, the Bankruptcy Court ordered that all of HomeGold's rights under the Policy be "transferred to Donald F. Clifford, Jr., trustee, for the use and benefit of the plaintiff class" in the *Tomlin* cases.

Plaintiff Donald F. Clifford, Jr. ("Plaintiff") subsequently filed this case as trustee for the *Tomlin* plaintiffs and assignee of the HomeGold Policy, alleging that Defendant American breached its contractual duty to defend HomeGold, breached its duty to pay benefits under the Policy, and also breached the obligations of good faith and fair dealing. Plaintiff filed the case in Superior Court in Orange County, North Carolina and secured a designation assigning the case to the North Carolina Business Court that had handled the *Tomlin* litigation. Defendant removed the case to this Court on the basis of diversity jurisdiction. Plaintiff has filed a motion to remand this case back to state court, alleging that there is not complete diversity. Defendant opposes the Motion to Remand and has filed a Motion to Dismiss, alleging that the assignment of HomeGold's claims to Plaintiff was invalid and that as a result, Plaintiff lacks standing to bring these claims on HomeGold's behalf. In addition, Defendant also contends that the case should be dismissed for failure to state a claim

because the *Tomlin* litigation fell within certain exclusions in the Policy. In addition to these motions, there are also various procedural motions that must be addressed. In analyzing these motions, this Court will first address the various outstanding procedural motions. The Court will then consider Plaintiff's Motion to Remand. Finally, the Court will consider Defendant's Motion to Dismiss.

## II.    PROCEDURAL MOTIONS

Defendant has filed a motion to amend the removal notice to correct certain allegations regarding Defendant's principal place of business. Plaintiff does not oppose the motion, but requests permission to submit additional factual materials in light of the amendment related to the residency of certain members of the *Tomlin* class. The Court has considered these motions and for good cause shown the Court will grant Defendant's Motion to Amend the Removal Notice [Document #11]. The Court will also grant Plaintiff's Request to Submit Additional Factual Materials [Document #15].[1] Based on these rulings, the Court will consider the Amended Removal Notice as well as Plaintiff's Additional Factual Materials in analyzing Plaintiff's pending Motion to Remand.

In addition, Defendant initially filed a Motion to Dismiss [Document #7] as to Plaintiff's original Complaint. However, Plaintiff was allowed to conduct limited discovery as to some issues raised in the Motion to Dismiss, and Plaintiff filed a request to hold the pending motions in abeyance during that time. Plaintiff subsequently filed an Amended Complaint, and Defendant requested an extension of time to respond to the Amended Complaint. Within the requested time,

---

[1] The Court notes that these materials are submitted and considered as part of the Motion to Remand, and do not relate to the Court's determination of the Motion to Dismiss pursuant to Rule 12(b)(6).

-4-

Defendant filed the present Motion to Dismiss the Amended Complaint [Document #35]. For good cause shown, the Court will allow Defendant's Motion for an Extension of Time [Document #34] to respond to the Amended Complaint, and will consider the Motion to Dismiss the Amended Complaint as filed. Based on these determinations, Defendant's first Motion to Dismiss [Document #7] as to the original Complaint is moot. Plaintiff's request to hold the pending motions in abeyance [Document #26] during the limited discovery is also moot since the limited discovery is now complete. Finally, Plaintiff's Motion for an Expedited Determination of the Remand Motion [Document #6] is likewise moot, since the remand motion is addressed and determined herein.

Having ruled on these pending procedural motions, the present motions are now before the Court and are ripe for disposition: Plaintiff's Motion for Remand [Document #4] and Defendant's Motion to Dismiss the Amended Complaint [Document #35]. The Court will consider each of these motions in turn.

## III.    MOTION TO REMAND

Plaintiff has moved to remand this case to state court based on his contention that this Court lacks jurisdiction because there is a lack of complete diversity. Under 28 U.S.C. § 1441(a), defendants have a statutory right to remove a civil action brought in state court over which "the district courts of the United States have original jurisdiction. . . ." See 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a)(2) and Article III of the Constitution, Federal Courts have jurisdiction over controversies between citizens of different states, but only if there is complete diversity of citizenship between the real and substantial parties to the controversy. See 28 U.S.C. § 1332(a)(2); Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61, 100 S. Ct. 1779, 1781-82, 64 L. Ed. 2d 425 (1980). "If diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal

court jurisdiction, and the citizenship of each real party in interest must be established by a preponderance of the evidence." <u>Roche v. Lincoln Prop. Co.</u>, 373 F.3d 610, 616 (4th Cir. 2004). When a case is removed to Federal Court, the party seeking to preserve the removal bears the burden of establishing federal jurisdiction. In evaluating diversity, "the parties' characterization of themselves or their claims is not determinative for federal jurisdiction purposes." <u>Id.</u> at 615-16.

In the present case, the parties agree that Defendant is an Alaskan corporation with its principal place of business in New York. The parties also agree that Plaintiff is a citizen and resident of North Carolina. On this basis, complete diversity exists. However, Plaintiff, who brought this suit "as Trustee for the Plaintiff Class in *Tomlin, et al.*," contends that he is a "nominal party" and that instead of considering his citizenship, the Court should consider the citizenship of all of the individual beneficiaries who are members of the underlying state court class actions. There are approximately 1,300 unnamed class members in the *Tomlin* litigation, and one of those individuals is a New York resident. If there is a recovery in the present case, some of the proceeds would be distributed by the Plaintiff as trustee to at least some of those class members, including, potentially, to the New York resident. Plaintiff contends that the residence of this potential beneficiary must be considered in the diversity determination, resulting in a lack of complete diversity between the New York Plaintiff (the potential beneficiary) and the New York Defendant (Defendant American).

In response, Defendant contends that the citizenship of the potential beneficiaries should not be considered, since under established Supreme Court precedent only the citizenship of the trustee is determinative. Defendant notes that this case is not a class action and involves only HomeGold's claims against Defendant, not any claims by the *Tomlin* plaintiffs themselves. Finally, Defendant notes that even if this were a class action, the named plaintiffs in the *Tomlin* litigation are

-6-

all North Carolina citizens, and there is simply no basis to consider the citizenship of an unnamed class member in the underlying state litigation.[2]

In analyzing these contentions, the Court finds first that Plaintiff is a trustee of an express trust created by Court Order. The Order creating the trust and appointing Plaintiff as trustee specifically granted him authority to hold all rights, benefits, and claims associated with the Policy, and to disburse any proceeds received. Cf. Restatement of Trusts § 4 cmt. f (noting that express trusts may be created by court order); see also Finch v. Honeycutt, 246 N.C. 91, 99, 97 S.E.2d 478, 485 (1957) (noting that a valid trust requires "(1) sufficient words to raise it, (2) a definite subject, and (3) an ascertained object" (citation omitted)). In addition, the agreement and Consent Order in the HomeGold Bankruptcy specifically transferred to Plaintiff, as trustee, title and ownership to all of HomeGold's rights and claims under the Policy, and granted Plaintiff the right to receive benefits and damages arising out of the Policy. Notably, the Consent Order did not assign or transfer the claims to any of the individual beneficiaries or class members, and no provision exists entitling any of the beneficiaries to control or direct the HomeGold claims. As trustee, Plaintiff has legal title over the claims and is entitled to control the litigation over any claims he holds. Cf. Restatement of Trusts § 5 cmt. j (noting that "[o]ne who is the trustee of a chose in action owes duties to the trust beneficiaries to enforce the chose and then pay the proceeds to, or hold and manage the proceeds for, the beneficiaries"). Plaintiff himself in the Amended Complaint alleges that he "brings this action in his capacity as the judicially appointed trustee for the members of the plaintiff class" in the *Tomlin* litigation. (Amended Compl. [Doc. #33] ¶ 2.) Unlike an agent or

---

[2] As noted previously, the potential beneficiary who is a New York resident is not a named party in the *Tomlin* litigation (or the related cases), but is simply an unnamed member of the *Tomlin* class and therefore a potential beneficiary of any recovery in the *Tomlin* class action.

representative, he actually holds the claims himself as a trustee, and has active, real control over those claims. Cf. Indiana Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314, 318 (7th Cir. 1998) (discussing attributes of trustee in diversity determination); see also Finch v. Honeycutt, 246 N.C. at 99, 97 S.E.2d at 485 (noting that "when any control is to be exercised or any duty performed by the trustee, however slight it may be . . . the trust is active." (internal quotations omitted)). Given all of these considerations, there is no question that Plaintiff is an active trustee with real and substantial authority.

The U.S. Supreme Court has consistently held that a trustee is a "real party to the controversy" for purposes of diversity jurisdiction. See Navarro, 446 U.S. at 460-61, 100 S. Ct. at 1781-82. In Navarro, the Supreme Court noted that "[a]s early as 1808, this Court stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship . . . . [and] [i]n 1870, the Court declared that jurisdiction properly founded upon the diverse citizenship of individual trustees 'is not defeated by the fact that the parties whom they represent may be disqualified.'" Id. at 462-63, 100 S. Ct. at 1782-83. The Supreme Court affirmed this principle in Navarro, and held clearly that a trustee with real and substantial control over the assets or claims is the "real party to the controversy" and such trustees may "sue in their own right, without regard to the citizenship of the trust beneficiaries." Id. at 465-66, 100 S. Ct. at 1784. Therefore, under this established precedent, only the trustee's citizenship is considered for purposes of determining diversity jurisdiction.

As noted above, the parties in the present case agree that Defendant is a citizen of Alaska and New York and that Plaintiff is a citizen of North Carolina, and that there is complete diversity if the potential individual beneficiaries are not considered. Given this Court's findings and the

Supreme Court's holding in <u>Navarro</u>, the Court concludes that the citizenship of the potential individual beneficiaries of the trust should not be considered, and that there is complete diversity among the real parties to the controversy, that being Plaintiff as trustee and the non-resident Defendant. Therefore, this Court has subject matter jurisdiction over this action, the removal to this Court was proper, and Plaintiff's Motion to Remand [Document #4] is denied.

IV.     MOTION TO DISMISS THE AMENDED COMPLAINT

Having determined that jurisdiction is proper, this Court will now consider Defendant's Motion to Dismiss the Amended Complaint. Defendant has moved to dismiss on two grounds. First, Defendant moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing based on Defendant's contention that the assignment of HomeGold's claims to Plaintiff was invalid. Second, Defendant moves to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6) based on Defendant's contention that the claims asserted in the *Tomlin* litigation were excluded from coverage by the language of the Policy. The Court will consider each of these two contentions in turn.

A.      Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendant contends that all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks standing to bring these claims. In support of this position, Defendant contends that North Carolina law applies to all of Plaintiff's claims, and that the assignment of HomeGold's claims to Plaintiff was invalid under North Carolina law. <u>See, e.g.</u>, <u>Horton v. New South Ins. Co.</u>, 122 N.C. App. 265, 468 S.E.2d 856 (1996).[3] Defendant further

---

[3] As discussed below, Defendant contends that under North Carolina law, claims for bad faith or breach of fiduciary duty are not assignable, based on the general principle that allowing the assignment of personal torts promotes "champerty." <u>See, e.g.</u>, <u>Horton</u>, 122 N.C. App. 265, 468 S.E.2d 856; <u>cf.</u> <u>Smith v. Hartsell</u>, 150 N.C. 71, 76, 63 S.E. 172, 174 (1908) (noting that "champerty"

contends that Plaintiff also lacks standing because the Policy itself prohibits assignment, and the assignment to Plaintiff was therefore invalid. In response, Plaintiff contends that his claims are actually governed by South Carolina law, and that the assignment of the claims to Plaintiff was valid under South Carolina law. See, e.g., Schneider v. Allstate Ins. Co., 487 F. Supp. 239 (D.S.C. 1980). In order to evaluate this issue, this Court must first determine which state's law applies to the assignment itself and to the claims brought by Plaintiff in this case. The Court will then consider whether the provisions of the Policy itself render the assignment invalid.

       1.      Choice of Law Determination and Validity of Assignment under State Law

With respect to the choice of law determination, the Court notes that the assignment itself is a contract between HomeGold, the HomeGold Bankruptcy Trustee, and Plaintiff as trustee for the *Tomlin* class. The assignment at issue was made in South Carolina and was entered as a Consent Order by the Bankruptcy Court for the District of South Carolina. Therefore, as an initial matter, the assignment itself is governed by South Carolina law. See Lone Star Cement Corp. v. Swartwout, 93 F.2d 767, 770 (4th Cir. 1938) (noting that interpretation of an assignment of a chose in action would be determined by the law of the state where the assignment was made); Callwood v. Virgin Islands Nat'l Bank, 221 F.2d 770, 774 (3d Cir. 1955) ("The generally accepted common law rule of conflict of laws is that the effect of an assignment of a chose in action is determined by the law of the place where the assignment is executed."). Having determined that South Carolina law governs the interpretation of the assignment itself, the Court must next consider what state law governs the underlying claims asserted by Plaintiff in the present action.

—————————————

is "an officious intermeddling in a lawsuit by a mere stranger" for profit "by bargain for part of the matter in suit" where "the interference is clearly officious and for the purpose of stirring up strife and continuing litigation").

In this case, Plaintiff brings breach of contract claims against Defendant for alleged breach of Defendant's contractual obligations to HomeGold under the Policy to provide a defense and make payment on any claims brought against HomeGold during the covered time period. Plaintiff also brings claims for bad faith and lack of fair dealing, which Defendant contends are tort claims governed by North Carolina law. Therefore, the Court will consider first the choice-of-law question as to the breach of contract claims, and will then consider the choice-of-law question as to the claims for bad faith and lack of fair dealing.

a.      Choice of Law for Breach of Contract Claims

With respect to conflict of law determinations for breach of contract claims, North Carolina follows the principle of *lex loci contractus*, which mandates application of "the substantive law of the state where the last act to make a binding contract occurred." Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 465-66 (2000). In the case of an insurance policy, the last act to form a binding contract of insurance is delivery of the policy to the insured. Id. Thus, for a claim involving breach of an insurance policy, the law of the state where the policy was delivered controls. Id.; see also NAS Sur. Group v. Precision Wood Prods., Inc., 271 F. Supp. 2d 776 (M.D.N.C. 2003) (holding that where a liability insurance policy was delivered to the insured at its corporate headquarters in South Carolina, South Carolina law would apply). In the present case, the Policy was applied for and obtained in Greenville, South Carolina by HomeGold, a South Carolina corporation, from Rosenfeld Einstein, a South Carolina insurance agent. The Policy was issued by Defendant American in New York, and was sent to HomeGold at HomeGold's Greenville, South Carolina mailing address. The Court finds that a preponderance of the evidence presented supports the conclusion that the Policy was delivered to HomeGold at its headquarters in South Carolina.

-11-

Therefore, under the general principle of *lex loci contractus*, South Carolina law will apply to the validity and interpretation of the contract claims in the present case.

Defendant contends that North Carolina law should nevertheless apply pursuant to North Carolina General Statute § 58-3-1, which provides that "[a]ll contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein, and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof." N.C. Gen. Stat. § 58-3-1 (2002). Defendant contends that this provision applies because the Policy covered "interests" in North Carolina in that the underlying liability arose in the North Carolina class action lawsuits. However, in interpreting § 58-3-1, the North Carolina Supreme Court has recognized that "the mere presence of the insured interests in this State at the time of an accident does not constitute a sufficient connection to warrant application of North Carolina law." Fortune Ins. Co. v. Owens, 351 N.C. at 428, 526 S.E.2d at 466; see also Johns v. Automobile Club Ins. Co., 118 N.C. App. 424, 427, 455 S.E.2d 466, 468 (1995) (holding that where an insurance contract was made in Tennessee to insure a Tennessee resident, North Carolina law would not apply because "[t]here are no significant contacts with North Carolina in this insurance contract action other than the fact that the injuries occurred in North Carolina"). In so concluding, the North Carolina Supreme Court noted that where the insurance policy was issued in Florida to a Florida resident, the fact that the underlying automobile accident occurred in North Carolina and the driver had a temporary North Carolina address was insufficient to show a significant connection between the Florida insurance policy and North Carolina. Because "[a]ll of the significant connections occurred in Florida" in that "[t]he insurance contract was entered into in Florida, and the parties to the contract were Florida residents" the North Carolina Supreme Court

-12-

concluded that the policy "must be construed in accordance with Florida law." Fortune Ins. Co. v. Owens, 351 N.C. at 429, 526 S.E.2d at 466.

Moreover, in interpreting § 58-3-1, other federal district courts in North Carolina have held that § 58-3-1 does not apply to general liability policies that do not cover real property or commercial vehicles titled in North Carolina. See American Motorists Ins. Co. v. CTS Corp., 356 F. Supp. 2d 583, 589 (W.D.N.C. 2005) (holding the § 58-3-1 does not apply to general liability insurance and comprehensive catastrophe insurance policies issued out of state); NAS Sur. Group v. Precision Wood Prods., Inc., 271 F. Supp. 2d 776 (M.D.N.C. 2003) (holding that a policy providing liability coverage for the acts and omissions of the insured party anywhere in the United States and Canada would not involve a significant connection to North Carolina requiring the application of North Carolina law).

Likewise, in this case, the Policy application was made by HomeGold in South Carolina and the Policy was delivered to HomeGold, a South Carolina corporation, in South Carolina. The Policy itself provided general liability coverage for acts by the insured nationally and internationally, with no specific connection to North Carolina. In addition, the Court notes that the evidence presently before the Court indicates that HomeGold, the insured, did not deal directly with any North Carolina citizens, and was sued in North Carolina based on its contractual relationship with Dylan Mortgage and alleged acts by Dylan Mortgage in North Carolina. Given these circumstances, the fact that claims were made against the insured (HomeGold) in a North Carolina lawsuit does not require the application of North Carolina law to the interpretation of HomeGold's liability Policy. The Court specifically concludes that North Carolina General Statute § 58-3-1 does not require the application of North Carolina law to interpret the Policy in this case. Therefore, the Court

concludes that South Carolina law will apply to the interpretation and determination of the breach of contract claims.

        b.      Choice of Law for Claims of Bad Faith and Lack of Fair Dealing

In addition to the breach of contract claims, Plaintiff also brings claims against Defendant for bad faith and lack of fair dealing. Defendant contends that these are separate tort claims governed by North Carolina law. With respect to tort claims, the "traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim," and "[f]or actions sounding in tort, the state where the injury occurred is considered the situs of the claim." Stetser v. TAP Pharm. Prods. Inc., 165 N.C. App. 1, 14, 598 S.E.2d 570, 580 (2004); see also Boundreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988). "Therefore, for the causes of action that are normally considered to be torts . . . the law of the state where the plaintiff was injured controls the outcome of the claim." Stetser, 165 N.C. App. at 14-15, 598 S.E.2d at 580.

In determining where the injury occurred in a case involving commercial or financial injury rather than physical injury, courts often look at the location where the economic loss was felt. See, e.g., Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 554, 555 (M.D.N.C. 1999) (noting that "[o]ther federal courts that have examined the application of the *lex loci delicti* rule to fraud claims consistently have concluded that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact" and therefore injury from alleged misrepresentations was suffered at the corporation's headquarters in North Carolina, so North Carolina law would apply); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983) (noting that financial injuries sustained by "a North Carolina corporation with its principal place of

-14-

business in North Carolina . . . were sustained in the state of North Carolina"); <u>Management Science</u> <u>America, Inc. v. NCR Corp.</u>, 765 F. Supp. 738, 740 (N.D. Ga. 1991) (applying the *lex loci delicti* rule in a case involving fraudulent misrepresentations, and holding that claims for economic losses and lost profits were felt in Ohio where the profits were booked, and the law of Ohio would apply rather than the law of the state where the misrepresentations were made); <u>Glass v. Southern Wrecker Sales</u>, 990 F. Supp. 1344, 1348 (M.D. Ala. 1998) (holding that "the state where the injury occurred in a fraud claim" is the state where the injured party's place of business was located because that was where "the plaintiff suffered the economic impact"); <u>see also</u> <u>Restatement of Conflict of Laws</u> § 377.

In the present case, the Court notes first that all of the claims arise out of the Policy, which is governed by South Carolina law, as discussed above. Moreover, to the extent the rule of *lex loci delicti* is applied to the bad faith and lack of fair dealing claims in this case, that rule would also result in the application of South Carolina law. HomeGold's operations and headquarters were based in South Carolina, and HomeGold transacted business with other entities in various states. As a result of HomeGold's relationship with Dylan Mortgage in North Carolina, HomeGold was sued in North Carolina in various class action lawsuits. Defendant in the present case notes that any duty to defend would have occurred in North Carolina because that was the situs of the underlying lawsuits. However, the demand by HomeGold for the defense came from its headquarters in South Carolina, and the denial of the defense was to HomeGold in South Carolina. This failure to defend certainly caused economic loss to HomeGold at its place of business in South Carolina. Therefore, the injury itself occurred in South Carolina. Although the underlying lawsuits happened to be in North Carolina, the alleged bad faith by Defendant was to HomeGold in South Carolina and was felt by HomeGold as an economic loss in South Carolina. Therefore, consistent with the interpretation

-15-

of prior decisions in this district as well as other federal district courts, the Court concludes that South Carolina law should apply to the bad faith and lack of fair dealing claims in this lawsuit.

Defendant further contends, however, that North Carolina law should nevertheless apply to these claims because application of South Carolina law would violate North Carolina public policy. Specifically, Defendant notes that South Carolina law allows the assignment of certain tort claims, including bad faith refusal to settle. See, e.g., Schneider, 487 F. Supp. at 241-46. Although not specifically addressed by the North Carolina Supreme Court, the North Carolina Court of Appeals has held that claims for bad faith or breach of fiduciary duty are not assignable, based on the general principle that allowing the assignment of personal torts promotes "champerty." See, e.g., Horton, 122 N.C. App. 265, 468 S.E.2d 856; cf. Smith v. Hartsell, 150 N.C. 71, 76, 63 S.E. 172, 174 (1908) (noting that "champerty" is "an officious intermeddling in a lawsuit by a mere stranger" for profit "by bargain for part of the matter in suit" where "the interference is clearly officious and for the purpose of stirring up strife and continuing litigation").

With respect to this contention, the Court notes first that under North Carolina law:

> "foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum. However, the mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to the public policy of the forum. To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor."

Boundreau v. Baughman, 322 N.C. at 341-42, 368 S.E.2d at 857-58 (citations omitted). The present case, which involves a commercial insurance dispute between a New York company and the assignee of a South Carolina company, does not involve any issue of "marriages, wagers, lotteries, racing, gaming, [or] the sale of liquor." Id. Nor does the case involve any undesirable attempt by an

-16-

individual to sell or assign his claims in a manner that promotes champerty. Cf. Smith v. Hartsell, 150 N.C. at 76, 63 S.E. at 174 (noting that "champerty" involves intermeddling in a lawsuit that is "clearly officious and for the purpose of stirring up strife and continuing litigation"). In this case, Plaintiff was appointed as trustee by the North Carolina Business Court with specific authority to "hold all rights, benefits, choses in action, claims or causes of action associated with Mortgage Bankers/Mortgage Brokers Errors & Omissions Insurance Policy no. 244-20-63 issued by American International Specialty Lines Insurance Company to HomeGold, Inc." In addition, the Bankruptcy Court in South Carolina specifically approved the assignment of these claims to Plaintiff. Thus, this assignment, which has been sanctioned by courts in both North Carolina and South Carolina, does not involve any champerty under North Carolina law. In this respect, the Court concludes that while there may be some types of assignments that could violate North Carolina public policy, those concerns are not directly implicated in the present case based on the specific types of claims and parties presented here. The assignment in this case would be allowed under South Carolina law, based on the narrow, specific conclusion by courts in South Carolina that under that state's law, a claim for bad faith refusal to settle is an injury to property, rather than a "purely personal" tort, and therefore is assignable. See Schneider, 487 F. Supp. at 244-45; Jolly v. General Accident Group, 382 F. Supp. 265, 267-69 (D.S.C. 1974). This Court is unable to find that such an application of South Carolina law would impinge upon North Carolina's "conception of good morals or fundamental principle[s] of natural justice." Boundreau, 322 N.C. at 342, 368 S.E.2d at 858. Therefore, the Court concludes that the public policy of North Carolina would not require the application of North Carolina law in this instance.

c.     Conclusion as to Proper Choice of Law

Having analyzed all of these claims and contentions with respect to the proper choice of law determination, the Court concludes that South Carolina law should apply to all of the claims brought by Plaintiff in this case.  Under South Carolina law, as noted above, the claims were assignable, and the assignment of HomeGold's claims to Plaintiff is valid.  Plaintiff therefore has standing to bring these claims, and Defendant's Motion to Dismiss on this basis will be denied.

2.     Validity of Assignment Under Policy Provisions

Defendant contends, however, that Plaintiff nevertheless lacks standing to bring these claims because the assignment was invalid under the provisions of the Policy itself.  Specifically, Section V-7 of the Policy provides that "'[t]his policy shall be void if assigned or transferred without the written consent of the Insurer.  If the Insured shall die or be adjudged incompetent, this policy will protect the Insured's legal representative as the Insured with respect to Claims previously reported and insured under this policy."  However, the Court finds that this clause does not prohibit the assignment in this case for two reasons.  First, South Carolina follows the general rule that "[g]eneral stipulations, in policies, prohibiting assignment thereof, except with the insurer's consent or upon giving some notice, or like conditions, have universally been held to apply only to assignments before loss, and, accordingly, not to prevent an assignment after loss or death, or the maturity of the policy, of the claim or interest in the insurance money then due."  Ligon v. Metropolitan Life Ins. Co., 64 S.E.2d 258, 264 (S.C. 1951).  In Ligon, the South Carolina Supreme Court held that such a provision "obviously refers to a situation where the insured undertakes to assign his policy of insurance during his lifetime. . . . [S]uch a restriction in the insurance policy is not intended to cover a case where the loss has already occurred and where the thing which is being assigned is a

-18-

claim for a loss." Id.; see also United States v. Lititz Mut. Ins. Co., 694 F. Supp. 159 (M.D.N.C. 1988) (holding that provision prohibiting assignment without insurer's consent did not apply to restrict assignment of claims after a loss occurred).

Moreover, Plaintiff alleges in this case that Defendant repudiated its obligations under the Policy when Defendant decided that the claims were not covered and ceased payment of defense costs and participation in settlement. If it is determined that Defendant was obligated under the contract, and if Defendant refused to perform essential contract obligations, then Defendant's "repudiation of coverage under [the Policy] relieves the insured of the obligation of performing conditions precedent prior to bringing suit for breach of contract." Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 382 (4th Cir. 2004). Therefore, on this basis as well, the contract provision prohibiting assignment would not apply in this case. Therefore, for both of these reasons, the Court concludes that the contract provisions would not apply to invalidate the assignment in this case.

### 3. Conclusion as to Motion to Dismiss Pursuant to Rule 12(b)(1)

For all of the reasons discussed above, the Court concludes that South Carolina law should apply to Plaintiff's claims in this case. Under South Carolina law, as noted above, the claims were assignable, and the assignment of HomeGold's claims to Plaintiff is valid under South Carolina law. The Policy provisions prohibiting pre-loss assignment without the insurer's consent do not apply to invalidate the assignment in this case. Therefore, Plaintiff has standing to bring these claims, and Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of standing is therefore denied.[4]

---

[4] The Court further notes that even if these claims were not assignable, the Court would not dismiss this case pursuant to Rule 12(b)(1), but would instead allow Plaintiff the opportunity to substitute the HomeGold Bankruptcy Trustee as the plaintiff in this suit.

B.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendant also contends that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because certain Policy exclusions relieved it of any liability under the Policy.  Specifically, Defendant contends that the Policy excluded claims alleging fraud by the insured (but only if such allegations were substantially proven), claims involving personal gain or profit to the insured or disputes regarding servicing fees, claims arising out of the insured's intentional non-compliance with a statute, and claims for a wrongful act committed with knowledge that it was a wrongful act.  (Policy at p.2-3.)  In regard to this issue, both parties have submitted a substantial volume of documents with respect to the nature of the claims brought against HomeGold in the *Tomlin* litigation, the determinations made by the trial court in the underlying litigation, and whether the Policy exclusions should apply here.

In evaluating these contentions, the Court notes first that the present motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).  In addition, "a party must be afforded a 'reasonable opportunity for discovery' before a Rule 12(b)(6) motion may be converted and summary judgment granted."  Gay v. Wall, 761 F.2d 175, 177-78 (4th Cir. 1985) (finding that "[b]ecause [plaintiff] was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.")  In the present case, both parties have submitted

various documents in an attempt to define the scope of the Policy exclusions and the nature of the claims and judicial determinations in the *Tomlin* litigation. However, this Motion comes before full discovery has commenced and without development of the record regarding the relationship between HomeGold and Dylan Mortgage, the nature of the claims, the determinations by the trial court in the underlying litigation, and the basis for Defendant's decision to cease payment after it had been participating in the litigation. Therefore, at this stage of the proceedings, the Court will not convert this motion into a motion for summary judgment, and will not consider the additional material submitted by the parties on this issue.

In reviewing the motion pursuant to Rule 12(b)(6), the Court must view the complaint in the light most favorable to the Plaintiff, accepting as true all well-pleaded allegations. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). A case should only be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984)). In determining whether Plaintiff has stated a claim under South Carolina law, which applies in this case as discussed above, the Court notes that an insured may bring a cause of action for breach of the duty to defend based on an insurer's failure to provide a defense if there is a "possibility of coverage" over the claims brought in the underlying litigation. Specifically, "[i]f the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." Isle of Palms Pest Control Co. v. Monticello, 459 S.E.2d 318, 319 (S.C. Ct. App. 1994)); see also Spartan Petroleum Co. v. Federated Mut. Ins. Co., 162 F.3d 805, 808 n.2 (4th Cir. 1998). Thus, "[i]f the suit includes any cause of action covered by the policy, the insurer must defend, even

-21-

if the suit joins other causes of action beyond the policy's scope." Ellett Bros., Inc. v. United States Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) (applying South Carolina law).

In this case, Plaintiff's Amended Complaint alleges that the *Tomlin* litigation involved claims against HomeGold that were within the scope of the Policy, including claims based on derivative liability against HomeGold for actions by Dylan Mortgage. (Am. Compl. ¶ 18.) The Complaint further alleges that Defendant was apprised of all aspects of the claims and ensuing litigation, and Defendant consented to HomeGold's choice of counsel and agreed to reimburse ninety-five percent (95%) of HomeGold's defense costs. Defendant had provided over $400,000 in payments to HomeGold to reimburse costs through May 2001, but then ceased payment of defense costs and participation in the litigation and settlement as of May 2001. Plaintiff contends that even if some of the claims against HomeGold involved allegations of fraud or knowing wrongful acts, other claims were derivative in nature or did not involve allegations of intentional bad acts by HomeGold.

After reviewing the allegations in Plaintiff's Complaint, the Court concludes that at this stage in the litigation, Plaintiff has stated a claim under South Carolina law to the extent that Plaintiff has alleged that there was at least a possibility of coverage of at least some claims under the Policy that would have required Defendant to provide a defense for HomeGold. To the extent that Defendant contends that certain Policy exclusions relieved them of the duty to defend, that is a determination that would require fact-finding and review of materials outside those properly considered on a Motion to Dismiss. Therefore, Defendant's Motion to Dismiss the Amended Complaint [Document # 35] is denied, without prejudice to Defendant asserting its contentions regarding the Policy exclusions as part of a subsequent motion for summary judgment.

V.      CONCLUSION

For the reasons discussed above, the Court will GRANT Defendant's Motion to Amend the Removal Notice [Document #11]. The Court will also GRANT Plaintiff's Request to Submit Additional Factual Materials [Document #15]. In addition, the Court will GRANT Defendant's Motion for an Extension of Time [Document #34] to respond to the Amended Complaint. Based on these determinations, Defendant's first Motion to Dismiss [Document #7] as to the original Complaint is moot. Plaintiff's request to hold the pending motions in abeyance [Document #26] during the limited discovery is also moot. Finally, Plaintiff's motion for an Expedited Determination of the Remand Motion [Document #6] is likewise moot, since the remand motion is addressed and determined herein.

In addition, with respect to the Motion to Remand, the Court concludes that there is complete diversity and this Court has subject matter jurisdiction. Therefore, Plaintiff's Motion to Remand [Document # 4] is DENIED. With respect to Defendant's Motion to Dismiss, the Court concludes that South Carolina law applies and the assignment was valid under South Carolina law. The Court further concludes that Plaintiff has stated a claim under South Carolina law, and the Court will not at this stage make factual determinations or consider additional documents to determine the applicability of any Policy exclusions. Therefore, Defendant's Motion to Dismiss pursuant to either Rule 12(b)(1) or Rule 12(b)(6) [Document # 35] is DENIED.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

This, the 21st day of September, 2005.

                                                United States District Judge

-23-